```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IN RE:                                          :
                                                :   Chapter 7
IRWIN JACOBS                                    :   Case No.: 22-10132 (MEW)
            Debtor.                             :
-----------------------------------------------------------------X
                                                :
J-K APPAREL SALES CO., INC. and                 :
S&I SALES CO., INC                              :
                                                :
            Plaintiffs                          :   Adv. Pro. No.:
                                                :
            v.                                  :
                                                :
IRWIN JACOBS                                    :   **COMPLAINT TO DETERMINE**
                                                :   **DISCHARGABILITY OF DEBT**
            Defendant                           :   **PURSUANT TO 11 U.S.C. §**
                                                :   **523(a)(2)(I)**
                                                :
                                                :
                                                :
-----------------------------------------------------------------X
```

## COMPLAINT

1. Plaintiffs, J-K APPAREL SALES CO., INC. and S&I SALES CO., INC (collectively "Plaintiffs"), by their attorneys, Schrier, Shayne, Koenig, Samberg & Ryne P.C. allege the following upon information and belief at all times hereinafter mentioned:

2. Plaintiffs bring this adversary proceeding pursuant to 11 U.S.C. § 523(a)(2)(A) and (c), seeking an order determining that the judgment obtained by the Plaintiffs against Defendant Irwin Jacobs (the "Debtor" or "Jacobs,") is excepted from discharge and for an order pursuant to 11 U.S.C. §523 to vacate the automatic stay imposed by 11 U.S.C. §362(a) by reason of the "non-discharge ability" of the debt owed by Debtor to J-K APPEREL SALES CO., INC. and S&I SALES CO., INC.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523.

4. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

5. Venue in Southern District of New York is proper under 28 U.S.C. §§1408 and 1409(a).

6. This Adversary Proceeding relates to the pending case of J-K APPAREL SALES CO., INC, v. IRWIN JACOBS pending in the New York Supreme Court, Nassau County Index No. 600612/2015.

7. Pursuant to the October 30, 2017 order of the Nassau County New York Supreme Court, judgment was granted to J-K APPEREL SALES CO., INC. and S&I SALES CO., INC. against Irwin Jacobs for a net amount of $2,747,734.

## THE PARTIES

8. Plaintiffs, J-K APPAREL SALES CO., INC. (hereinafter "JK") and S&I SALES Co., INC. (hereinafter "S&I") are plaintiffs in this action.

9. Defendant Irwin Jacobs is the debtor and defendant in this action.

## BACKGROUND

10. The Debtor, Irwin Jacobs ("Jacobs") and Steve Kenger ("Kenger") were each 50% shareholders of both J-K Apparel Sales Co., Inc. and S & I Sales Co., Inc.

11. Up until January 24, 2015, the two (2) companies were the sole sales representatives of Prestige Global Co., Ltd. ("PG Taiwan") and the affiliated Prestige Global PTE companies located throughout Asia (the "PG PTE affiliates").

12. The PG PTE affiliates were and still are apparel and home goods sourcing companies

based in various countries in Asia.

13. PG Taiwan is a management company that coordinates the sourcing of factories by the PG PTE companies and the sales force, supply chain and financial record keeping of all sales.

14. Prior to January 24, 2015, JK/S&I's business was to identify private label products to sell to mostly "big box" retail customers in the U.S, Canada and Europe and then coordinate with the PG PTE affiliates for the production of the products ordered.

15. The PG PTE companies were responsible to locate factories throughout Asia to produce the goods ordered, supervise the production and arrange for delivery, FOB Asia.

16. The sale was usually made directly between the factory and the customer.

17. The factory typically paid a commission for sourcing customers and most of the customers (the retailers) paid a commission for sourcing the factory that could produce the desired product at acceptable prices.

18. All money was paid to the local PG PTE company that had sourced out the factory who in turn paid an affiliated Prestige Global company located in the Seychelles.

19. The Seychelles affiliate would in turn pay Prestige Global Co, Ltd, located in Taiwan (PG-Taiwan) a management fee for coordinating the sales with the local PG affiliates, oversee and coordinate all supply chain issues, invoice the purchasing retailers and collection of those invoices, and oversee all financial aspects of the PG organization including all commissions and bonuses to be paid.

20. Initially, JK/S&I was to receive a 3% commission on all sales, regardless of the monetary amount of commissions actually earned from payments from the factories and retailers.

21. As the business grew and sales increased, the parties agreed that JK/S&I would receive a

"base commission" of 3% of sales to be paid in advance in monthly payments based upon expected sales and a bonus commission based upon 42% of the "profits" of the entire PG organization after a pre-agreed payment to each PG affiliate to cover overhead and salaries of the principals of each affiliate.

22. 58% of the remaining profits were distributed to the principals of the PG-PTE Asian affiliates).

23. Jacobs was responsible for all in house business operations of JK/S&I including the collection of commissions, the payment of all expenses and the distribution of money to Kenger and himself as the principals of JK/SI.

24. For almost 20 years before JK/S&I ceased business operations in January 2015, Jacobs wrote virtually every check, arranged for the base commission wire payments from Prestige-PTE-Seychelles to JK/S&I, and coordinated all revenue and commission payments with Prestige Taiwan and including the wire payments for distributions of the "Bonus Commissions".

25. Kenger, on the other hand focused virtually all his time traveling to customers' offices throughout North America and Europe and meeting customers at factories throughout Asia.

26. In 2011, sales started to decline.

27. By January 2015, the Prestige Board had come to believe that Jacobs was mismanaging the sales efforts, keeping key information from the members of the Prestige-Taiwan board of directors and further had made representations that the sales were/would be more than actually realized, resulting in the advancement and overpayment of commissions to JK/SI of over $2,000,000 in commissions for the period 2011 through 2014.

28. On January 24, 2015 a majority of the members of the board of directors of Prestige made the decision to terminate the oral "at will" sales representative relationship with JK/S&I.

29. After JK/S&I was terminated as the sales representative for the Prestige Global group of companies on January 24, 2015, Kenger discovered that Jacobs, who had been responsible for all financial affairs of JK/S&I, had been paying some of Jacobs' personal expenses by diverting some of the bonus commissions instead of making payment directly to JK/S&I.

30. On January 31, 2015 Kenger, as an officer, director and 50% shareholder of JK/S&I instituted an action against Jacobs in the New York Supreme Court, County of Nassau (Index #600612/2015) in which causes of action for mismanagement, breach of fiduciary responsibility, diversion of assets, accounting and dissolution of both corporations were asserted.

31. Upon the motion for summary judgment, clear proof of the intentional diversion of assets was submitted in support of the motion for summary judgment including copies of emails sent from and to Jacobs requesting and confirming the request for the transfer of funds, emails and wire transfer confirmations from PG-PTE- Seychelles that funds were in fact sent as requested by Jacobs and summaries of those transfer of funds were produced, all from the books and records of Prestige-Taiwan.

32. As a result, the Supreme Court made a finding of fact that between the period 2006 to 2014 Jacobs had diverted $4,874,455.

33. However, notwithstanding the fact that the Supreme Court recognized that "...Kenger was not aware of the distributions until he learned of them in the course of discovery…" (Page 6 of Exhibit A), the Court ruled that the damages should be subject to a six-year statute of limitations pursuant to CPLR§213(3) and therefore awarded damages in the sum of $2,747,734 representing the amount of money diverted by Jacobs for the six year period prior to the institution of the lawsuit.

## PROCEDURAL HISTORY

34. Jacobs appealed the New York Supreme Court order and the New York Appellate Division, Second Department which affirmed the lower court decision via an order dated December 9, 2020 (See Exhibit "B").

35. Jacobs then made an application to the Appellate Division to reargue the appeal or in the alternative for permission to appeal to the New York Court of Appeals.

36. The Appellate Division denied Jacobs' application via an order dated March 24, 2021 (see Exhibit "C").

37. Jacobs then made an application to the New York Court of Appeals for permission to appeal the Appellate Division decision, which application was denied on September 15, 2021 (See Exhibit "D").

38. Jacobs then discharged his then attorneys, retained new counsel who made a motion to reargue the initial order granting summary judgment, which application was denied via an order dated January 20, 2022 (a copy of which is submitted as Exhibit "E").

39. Thereafter Jacobs filed a Chapter 7 petition on February 3, 2022 seeking protection under the U.S. Bankruptcy laws (ECF #1).

## CAUSE OF ACTION TO VACATE THE STAY OF THE BANKRUPTCY PROCEEDING

40. 11 U.S.C. §362(a) provides for an automatic stay of all proceedings against a party who files for protection under the U.S. bankruptcy laws.

41. The bankruptcy laws were designed to protect innocent people who are unable to pay their debts.

42. 11 U.S.C. § 523 provides circumstances in which certain debts are not dischargeable.

43. The pertinent parts of 11 U.S.C. § 523(a) provides that:

> "…A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt…
> …(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition…
> …(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;…"

44. The debt owed to JK/S&I by Jacobs was as a result of his willful and intentional fraudulent diversion of $4,874,455.

45. Both the Supreme Court of the State of New York and the Appellate Division held that Jacobs was acting in a fiduciary capacity when he committed the fraudulent diversion of JK/S&I's assets.

46. By reason of the foregoing, pursuant to 11 U.S.C. § 523(a)(2) and (4) the debt owed to JK/S&I by Jacobs should not be subject to discharge by reason of a debtor's wrongful acts and the automatic stay of enforcement of the debt should be lifted. .

**WHEREFORE**, it is respectfully requested that this Court issue an order vacating the automatic stay imposed by 11 U.S.C. §362(a) with respect to the debt owed to JK/S&I and for such other and further relief as to this Court may seem just and proper.

Respectfully submitted;

___/S RICHARD E. SCHRIER___
SCHRIER, SHAYNE, KOENIG, SAMBERG & RYNE, P.C.
Attorneys for J-K Apparel Sales Co., Inc and S&I Sales Co., Inc., Creditors
595 Stewart Avenue
Garden City, New York 11530
(516) 739-8000
By: Richard E. Schrier, Esq., on the brief

Dated: Garden City, New York
     March.    25  , 2022

        Yours, etc.,
        **SCHRIER, SHAYNE, KOENIG, SAMBERG & RYNE, PC**

        **__/s/ Richard E., Schrier _____**
        **By: Richard E. Schrier, Esq. (9985)**
        **595 Stewart Avenue**
        **Garden City, New York 11530**
        **Tel.: (516) 739-8000**
        **Fax: (516) 739-8004**
        **resincourt@aol.com**
        *Attorneys for* **J-K APPEREL SALES CO., INC. and S&I SALES CO., INC.**